UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| ANGEL CELESTE JASPER ) | Case No. 08-15086-SSM |
| JAMES THOMAS JASPER, JR. ) | Chapter 7 |
| ) | |
| Debtors ) | |

**MEMORANDUM OPINION**

Before the court is the motion of W. Clarkson McDow, Jr., United States Trustee, Region Four ("U.S. Trustee") to dismiss the debtors' case as an abuse of chapter 7. The debtors, who oppose the motion, have raised as a preliminary issue whether the U. S. Trustee even has standing to bring such a motion when he did not first file a statement that the debtors' case would be presumed to be an abuse of chapter 7, but only a statement that he was unable to make such a determination. A hearing was held on December 2, 2008, at which the court heard oral argument and allowed additional time for the parties to brief the issue. The parties have done so, and the question is ripe for determination. For the reasons stated, the court determines that the U.S. Trustee is not barred from prosecuting the motion to dismiss.

Background

Angel Celeste Jasper and James Thomas Jasper, Jr. (the "debtors") filed a joint voluntary petition in this court on August 22, 2008, for relief under chapter 7 of the Bankruptcy Code. On their schedules they reported $165,294 in secured claims and $22,341 in unsecured claims. They also reported gross monthly income of $10,047, net monthly income of $6,979, and monthly

expenses of $7,066.  Although they filed with their schedules the required Chapter 7 Statement of Current Monthly Income and Means-Test Calculation (Official Form 22A) stating that the presumption of abuse did *not* arise, *all* the blocks for the input of monetary amounts were filled in with the figures "$0.00".[1]  The meeting of creditors was held on September 18, 2008.[2]  On September 29, 2008, the U.S. Trustee filed a docket-entry statement that read as follows:

> Having reviewed the documents, if any, filed by the debtor and any additional documents provided to the United States Trustee, the United States Trustee is currently unable to determine whether the debtor's case would be presumed to be an abuse under Section 707(b) of the Bankruptcy Code.

Doc. # 9.  On October 2, 2008—14 days after the meeting of creditors—the debtors filed amended schedules, including for the first time a completed Form 22A.  On the form, the debtors—who now checked the box that "the presumption of abuse arises"—reported current monthly income of $10,585 and allowable deductions of $9,294, for a 60-month disposable income of $77,500  under the "means test."

On October 29, 2008, the U.S. Trustee filed the motion that is currently before the court requesting that the case be dismissed as an abuse of chapter 7.  The debtors filed a response denying that the case was an abuse and asserting that substantial deficiency claims from foreclosure of their residence and repossession of a motor vehicle constituted a special

---

[1] At oral argument, debtors' counsel explained that the zero amounts in every block were the result of a glitch in his bankruptcy form preparation software.  The court notes that a similar problem existed with the Rule 2016 disclosure of compensation, which likewise contained only zero figures.

[2] The debtors, in their reply to the brief filed by the U.S. Trustee, state that the meeting of creditors was not concluded on September 18th, but was continued to October 2nd and concluded on that date.  Whether this is true or not unfortunately cannot be determined from the docket, since the trustee did not file any statement reflecting such a continuance, and neither party has provided the court with a transcript of the September 18th meeting.

circumstance such that they should be permitted to proceed in chapter 7. Several days later, they supplemented the response with an "objection" asserting, first, that because the U.S. Trustee had not filed within 10 days of the meeting of creditors a statement that the debtor's filing was presumed to be an abuse, he was barred from seeking dismissal under the "means test" provisions of § 707(b)(2); and second, that the U.S. Trustee had not alleged sufficient facts to state a claim for dismissal under the totality of the circumstances test in § 707(b)(3).

## Discussion

### I.

The debtors' challenge centers on changes to the Bankruptcy Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 ("BAPCPA"). Prior to BAPCPA, a chapter 7 case of an individual whose debts were primarily consumer debts could be dismissed—on the court's own motion or on motion of the United States Trustee, but not at the suggestion or request of creditors—if chapter 7 relief would constitute a "substantial abuse." *Green v. Staples (In re Green)*, 934 F.2d 568 (4th Cir. 1991) (adopting "totality of the circumstances" test for "substantial abuse."). BAPCPA made a number of significant changes. First, the standard was modified from "substantial abuse" to "abuse." § 707(b)(1), Bankruptcy Code. Second, standing to bring such motions was now given to creditors in some instances. *Id.* And third, an elaborate, if somewhat artificial, "means test" was introduced that triggers a presumption of abuse if the debtor's "current monthly income" less certain specified allowances and expenses, multiplied by 60, exceeds $6,575 (provided that would pay at least 25% of nonpriority unsecured claims), or $10,950, regardless of the amount of

the claims.[3] § 707(b)(2), Bankruptcy Code. The presumption of abuse may be rebutted by demonstrating "special circumstances . . . that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." § 707(b)(2)(B)(i), Bankruptcy Code. But even if the presumption of abuse does not arise or is rebutted, the case can nevertheless be dismissed if the petition was filed in bad faith or "the totality of the circumstances . . . demonstrates abuse." § 707(b)(3), Bankruptcy Code. The means-test presumption of abuse only applies if the debtor's current monthly income exceeds the state-wide median income for a household of the same size. § 707(b)(7), Bankruptcy Code. Additionally, unless the debtor's current monthly income is greater than the state-wide median income for a household of the same size, only the judge or the United States Trustee may seek dismissal even under the totality of the circumstances test. § 707(b)(6), Bankruptcy Code.

      Unless the debtor is exempt from means testing, he or she must file, no later than 15 days after the filing of the petition, "a statement of current monthly income" and, if the current monthly income is greater than the state-wide median for a family of the same size, "the calculations in accordance with § 707(b), prepared as prescribed by [Official Form 22A]." Fed.R.Bankr.P. 1007a)(4). Within 10 days after the "first meeting of creditors," the U.S. Trustee is required to "review all materials filed by the debtor and . . . file with a court a statement as to whether the debtor's case would be presumed to be an abuse[.]" § 704(b)(1)(A), Bankruptcy Code. The clerk must provide a copy of the statement within three days "to all creditors." § 704(b)(1)(B). And within 30 days of the filing of the statement, the U.S. Trustee must "either

---

[3] As enacted, the dollar amounts were $6,000 and $10,000, respectively. These have been subsequently adjusted in accordance with § 104(b), Bankruptcy Code, to reflect changes in the cost of living.

file a motion to dismiss or convert under section 707(b) or file a statement setting forth the reasons the United States trustee . . . does not consider such a motion to be appropriate, if the United States trustee . . . determines that the debtor's case should be presumed to be an abuse under section 707(b) and [the debtor's current monthly income exceeds the statewide median for a household of the same size]." § 704(b)(2), Bankruptcy Code.  In any event, "[e]xcept as provided in § 704(b)(2)," a motion to dismiss a chapter 7 case for abuse must be filed within 60 days after the "first date set for the meeting of creditors" unless, on request filed before the time has expired, the court extends the time for cause.  Fed.R.Bankr.P. 1017(c)(1).

II.

There is no dispute that the debtors' current monthly income exceeds the state-wide median income for a family of the same size.  There is also no dispute—as the debtors expressly admitted when they filed a completed Form 22A—that the presumption of abuse does in fact arise.  The only dispute is whether the United States Trustee can bring a motion to dismiss on that basis, when he did not file a statement positively asserting what the debtors eventually conceded, namely that the presumption of abuse exists.  Although nothing in the language of Section 707(b) imposes any procedural requirements on a motion to dismiss other than "notice and a hearing," the debtors cite to a number of reported decisions outside the Fourth Circuit that have held that the U.S. Trustee must strictly comply with the 10-day statement requirement in § 704(b) as a condition of bringing a motion to dismiss under the means test.  *See, e.g., In re Robertson*, 370 B.R. 804 (Bankr. D. Minn. 2007); *In re Byrne*, 376 B.R. 700 (Bankr. W.D. Ark. 2007); *In re Draisey*, 395 B.R. 79 (8th Cir. BAP 2008); *In re Perrotta*, 378 B.R. 434 (Bankr. D. N.H. 2007).  *Robinson* is representative of such cases in taking the position that the U.S. Trustee

5

is limited to stating that the case either is or is not presumed to be an abuse, and that the timely filing of an "unequivocal" statement by the U.S. Trustee is a prerequisite to filing a motion to dismiss based on a presumption of abuse.  In *Robinson,* the U.S. Trustee had filed a statement 10 days after the meeting of creditors stating that because "that the debtor has not filed nor transmitted all of the required means testing documents," the U.S. Trustee "cannot make a determination as to whether debtor's case is presumed abusive under § 707(b)."  370 B.R. at 807.  Twenty-four days later the U.S. Trustee filed a motion to dismiss under the means test.  *Id. Robinson* begins with the premise that "[s]ection 704(b)(1)(A) prescribes the groundwork and specifies the staging for a UST's motion for dismissal, in which the presumption of abuse may be invoked to make out a prima facie case."  370 B.R. at 809.  After next interpreting the word "whether" to mean only "is" or "is not", the opinion concludes that because the duties imposed on the U.S. Trustee by § 704(b) are mandatory, "its procedural prescriptions are essential prerequisites for any subsequent motion."  370 B.R. at 809-811.  The only issue on which courts that have adopted this view have divided is whether the curious phrase—"the first meeting of creditors"—used in § 704(b) is simply a synonym for the meeting of creditors required by § 341(a),[4] which would suggest that the 10 days begins to run when the meeting is concluded, or instead means the first date on which the meeting of creditors is scheduled to be held.[5]

---

[4]  The term "first meeting of creditors" was used in the former Bankruptcy Act of 1898 to refer to what the current Bankruptcy Code simply calls the "meeting of creditors," although in informal parlance many bankruptcy attorneys, and even some courts, continue to refer to the meeting of creditors required by § 341(a), Bankruptcy Code, as the "first" meeting of creditors.  Aside from its use in § 704(b), the term "first meeting of creditors" appears nowhere else in the Bankruptcy Code or Bankruptcy Rules.

[5]  Cases holding that the 10-day period begins running on the first date set for the meeting of
(continued...)

Only one court seems to have questioned the existence of a linkage between the duties imposed on the U.S. Trustee by § 704(b) and his or her ability to bring a motion to dismiss under § 707(b). *In re Cadwallder*, 2007 WL 1864154 (Bankr. S.D. Tex. 2007). In *Cadwallder*, the meeting of creditors was twice continued because the debtor had not provided all required information. *Id* at *3-4. Nine days after the meeting was concluded, the U.S. Trustee filed a statement identical to the statement filed in this case. Twenty-four days later—which was the 60th day after the *commencement* of the meeting of creditors—the U.S. Trustee filed both a "supplemental" statement that the debtor's case was presumed to be an abuse and a motion to dismiss for abuse. *Id.* at 4. The debtor, as here, argued that the motion to dismiss was untimely. Judge Wesley Steen began his careful and thoughtful analysis by acknowledging the weight of authority supporting the debtor's position:

> Virtually all of the authority that the Court has seen to date . . . seems to assume that § 704(b) establishes a deadline for U.S. Trustee action and that a tardy motion is time-barred. The Court is very reluctant to swim upstream against the assumptions of so many learned writers.

*Id.* at *6. Nevertheless, Judge Steen—himself no slouch as a jurist—goes on to conclude:

> [T]he Court believes that § 704(b) establishes a duty, but does not establish the penalty for failure to perform that duty, and therefore even if a U.S. Trustee failed to comply strictly with his § 704(b) duties, his motion to dismiss would not (merely for that reason) be time-barred.

---

[5](...continued)
creditors include *In re Close,* 353 B.R. 915 (Bankr. D.. Kan. 2006), *aff'd* 384 B.R. 856 (D. Kan. 2008) and *In re Clark*, 393 B.R. 578 (Bankr. E.D. Tenn. 2008). Cases that take the view that the 10 days runs from the conclusion of the meeting of creditors include *In re Granger*, 2008 WL 5157843 (Bankr. D. N.M. 2008). A leading treatise adopts the latter view. 6 Collier on Bankruptcy ¶ 704.17 at 704-37 (15th ed. rev. 2005).

*Id*.  In reaching this conclusion, Judge Steen cited to the Supreme Court's opinion in *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003), which involved a challenge by several coal companies to assignment of retirees to them by the Commissioner of Social Security for the purpose of funding retiree benefits under the Coal Act.  Although the assignments were made after the date specified in the statute, the high court rejected the companies' arguments that the assignments were therefore invalid.  Writing for the majority, Justice Souter noted that an earlier decision, *Brock v. Pierce County*, 475 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), had held that a statutory deadline imposed on the Secretary of Labor for recouping grant funds that had been improperly expended "was meant to spur him to action, not limit the scope of his authority, so that his untimely action was valid." *Peabody*, 537 U.S. at 150.  Justice Souter then explained:

> It misses the point simply to argue that the [statutory date for making the assignments] was "mandatory," "imperative," or a "deadline," as of course it was, however unrealistic the mandate may have been. The Commissioner had no discretion to choose to leave assignments until after the prescribed date, and the assignments in issue here represent a default on a statutory duty, though it may well be a wholly blameless one. But the failure to act on schedule merely raises the real question, which is what the consequence of tardiness should be.
>
> * * *
>
> We [have] expressed reluctance "to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake[.]" . . . Nor, since *Brock*, have we ever construed a provision that the Government "shall" act within a specified time, without more, as a jurisdictional limit precluding action later. . . . "[I]f a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction."

*Peabody*, 537 U.S. at 158-59 (internal citations omitted).

After discussing the holdings in *Peabody* and *Brock*, Judge Steen then addressed the debtor's argument "that § 704 deadlines were intended to give the Debtor an early and definitive statement of whether his case would be challenged as abusive" by cogently observing:

> [B]ut obviously that could not be Congress' objective since even if the U.S. Trustee makes no statement, a debtor would not have that comfort until the deadline had run for creditors and the Court to bring their own motions. In any event, it is not likely that Congress would have established a standard (dismissal of bankruptcy cases for abuse) and then would have relegated enforcement of that standard to the Court acting on its own motion if the U.S. Trustee missed a deadline. . . . There is no indication of any reason why Congress would have intended an earlier deadline to apply only to the U.S. Trustee. If noncompliance with § 704(b) precluded the U.S. Trustee from bringing a motion to dismiss, the effect would be to shift the burden to the Court or to creditors. The Court knows of no logic supporting that result.

*Cadwallder* at *7. This court concurs. Indeed, BAPCPA's limitation of means testing to above-median income debtors and its conferring of standing on creditors to seek dismissal for abuse only for above-median income debtors provides a more convincing rationale for the time limits in § 704 than any supposed Congressional desire to confer early peace of mind on debtors. The time limit for filing motions to dismiss for abuse (whether under the means test or totality of the circumstances) is 60 days from the "first date set" for the meeting of creditors. Fed.R.Bankr. P. 1017. Putting aside the unsettled question of when the 10-day statement period starts running if the meeting of creditors is not commenced and concluded on the same day, adherence by the U.S. Trustee to the time limits mandated by § 704(b) will mean that if the U.S. Trustee makes a timely initial determination that the presumption of abuse does *not* arise, creditors will still have 50 days in which to conduct their own investigation, and, if appropriate, bring their own motions. Similarly, if the U.S. Trustee makes a timely initial determination that the presumption of abuse *does* arise, but then decides not to file a motion, creditors would still have at least 20 days in

which to act. In this connection, it is telling that the statute requires the clerk to provide the 10-day statement only to the creditors and is silent concerning the debtor—a curious omission if the intended beneficiary of the time limit were the debtor. Rather, as a leading treatise observes:

> Presumably, [the requirement to provide creditors a copy] is to give creditors an opportunity to file their own motions to dismiss under § 707(b)(2), if they are eligible to do so. *However, it is likely that most creditors will wait and see if the United States Trustee files a motion, thereby saving them the expense.*

6 Collier on Bankruptcy ¶ 704.17 at p. 704-37 (15th ed. rev. 2005) (emphasis added). As Judge Steen notes, the requirement to provide a copy to creditors but not the debtor leads logically to the conclusion "that creditors and the court, not the debtor, are the intended beneficiaries of the short deadlines [*sic*] for the U.S. Trustee's statement" and that "the statute effects a mechanism for letting these alternative movants know whether they need to file their own motions," which they would not need to do "if the U.S. Trustee will take on that burden." *Cadwallder* at *8.

III.

Although this court agrees with *Cadwallder* that § 704(b) does not in direct terms create a limitations period for filing motions to dismiss for abuse, the opinion does not address the effect of then-Interim Rule 1017(e).[6] The rule establishes a deadline of 60 days from the "first date set" for the meeting of creditors for bringing motions to dismiss for abuse "[e]xcept as otherwise provided in § 704(b)(2)." Section 704(b)(2) in turn requires the U.S. Trustee, within 30 days of filing a statement as to presumed abuse, to file either a motion to dismiss for abuse or a statement

---

[6] The Interim Rules were adopted by bankruptcy courts around the country, including this court, in response to the passage of BAPCPA, since the early effective date of the statute did not permit adequate time for the Supreme Court to adopt the necessary implementing rules under 28 U.S.C. § 2075. On December 1, 2008, amendments to Rule 1017, Federal Rules of Bankruptcy Procedure, took effect that incorporated former Interim Rule 1017 without change.

Case 08-15086-SSM    Doc 21    Filed 01/13/09    Entered 01/13/09 15:43:16    Desc Main
                          Document          Page 11 of 17


why the U.S. Trustee does not consider such a motion to be appropriate.  The time limit only applies, however, if the U.S. Trustee has determined that the presumption of abuse arises and the debtor's current monthly income exceeds the statewide median.  If those conditions are met, however, the court would have to conclude that the "except as" clause in Rule 1017(e) effectively reduces the 60-day time limit that would otherwise apply and requires that the U.S. Trustee bring a motion to dismiss based on a presumption of abuse under the means test no later than 30 days after filing the 10-day statement required by § 704(b)(1).  A motion to dismiss based on bad faith or totality of the circumstances, however, is subject only to the general 60-day limitation.

In the present case, the U.S. Trustee filed a statement concerning the presumption of abuse within 10 days after the meeting of creditors.[7]  The motion to dismiss was filed 30 days later.  The motion was therefore filed within the time limit established by Rule 1017, even with the incorporation of § 704(b)(2).  (And, of course, since it was filed within 60 days of the date of the meeting of creditors, the motion is unquestionably timely to the extent it seeks dismissal based on totality of the circumstances.)  To be sure, the statement did not "unequivocally" take a position with respect to the presumption of abuse but stated only that the U.S. Trustee was unable to make such a determination at that time.  But the court cannot agree with those courts that have held that a 10-day statement is defective to the point of being a nullity if it does not take an "unequivocal" position that the presumption either does or does not arise.  Although the court readily concurs that the dictionary definition of the word "whether" refers to one of two possible

---

[7] The literal tenth day after the meeting of creditors would have been September 28, 2008. However, because that day was a Sunday, the period was extended to the next day that was not a Saturday, Sunday, or legal holiday. Fed.R.Bankr.P. 9006(a). Thus, the statement filed on Monday, September 29th, was timely. And if, as the debtors represent, the meeting was not actually concluded until October 2nd, the statement was more than timely.

alternatives, the word does not occur in isolation (i.e., the statute does not say "a statement *whether* the debtor's case would be presumed to be an abuse") but as part of a longer phrase, "*as to* whether"—that is, a statement *concerning* or *addressing* the question of whether the presumption arises. A statement can address a subject without necessarily taking a position.[8] Accordingly, the court believes that a statement that a determination cannot be made at the time the statement is filed satisfies the statutory requirement, particularly when the purpose of the statement is simply to alert creditors (and the court) as to whether the U.S. Trustee will take the laboring oar with respect to a motion to dismiss under the means test. For that reason, the court does not agree that the 10-day statement filed by the U.S. Trustee in this case was a nullity, as the debtors argue, simply because it did not adopt an "is" or "is not" position on the presumption of abuse.

IV.

In the present case, there is the added consideration that the debtors are in a particularly poor equitable posture to claim the benefit of a strict 10-day deadline for an "is" or "is not" presumption-of-abuse statement when they themselves did not comply with the deadline for filing a proper Form B22A, and indeed did not file it until four days *after* the deadline for the U.S. Trustee's statement.[9] Although in this instance the court assumes no bad faith on the part of

---

[8] Indeed, nothing in the text of § 704(b)(2) expressly limits the bringing by the U.S. Trustee of a motion to dismiss to those situations in which the U.S. Trustee has filed a *positive* statement of presumed abuse under § 704(b)(1). The literal language of the statute would equally permit the U.S. Trustee to file a negative statement of presumed abuse, but nevertheless, provided it were done within 30 days, file a motion to dismiss based on the means test presumption of abuse.

[9] As noted, the debtors represent in their reply brief that the meeting of creditors was not actually concluded until October 2, 2008—the same date they filed a non-blank Form 22A—and they
(continued...)

12

the debtors and will accept their attorney's explanation of a software glitch, it requires no great stretch of the imagination to see the potential for mischief if debtors could default in providing the information needed by the U. S. Trustee to evaluate the case for the presumption of abuse, and then proclaim, "Gotcha!" when the U.S. Trustee is unable because of that failure to file a statement—which presumably would be subject to the constraints of Rule 9011[10]—that the case either is or is not presumed to be an abuse. For that reason, even if the court were to accept the argument that debtors are the intended beneficiaries of the time limits prescribed by § 704(b), the court believes that the doctrine of equitable tolling would appropriately apply in a situation, such as this, in which the debtors themselves, by failing to file a completed Form B22A, effectively

---

[9](...continued)
argue that the U.S. Trustee would therefore have had ample opportunity (with full benefit at that point of a completed Form 22A) to file an "is" or "is not" statement rather than a "don't know" statement. This is true, of course, only if the 10 days runs from the conclusion of the meeting. Although some courts so hold, there are also reported opinions to the contrary, and there is no obvious reason why the U.S. Trustee should have taken the risk, in the absence of a definitive ruling within this circuit or district, of filing a statement out of time.

[10]  Rule 9011, Federal Rules of Bankruptcy Procedure, provides in relevant part:
> (b) REPRESENTATIONS TO THE COURT.  By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, *or other paper*, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances* . . . the claims, defenses *and other legal contentions therein* are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and] the allegations and other factual contentions have evidentiary support[.]

In their reply brief, the debtors suggest that a seriously incomplete Form 22A would justify the United States Trustee in filing a statement that the presumption of abuse *did* arise. Debtors' Reply Brief 3 n.1 and 5 (*citing In re Close*, 353 B.R. 915, 918 (Bankr. D. Kan. 2006)). In the absence of an authoritative ruling in this district or circuit adopting such a view, however, the court can hardly fault the U.S. Trustee in not wishing to take an "unequivocal" position without substantial information to back it up.

prevented—or at least greatly hindered—the U.S. Trustee from filing a definitive ("is" or "is not") statement of presumed abuse.[11]  As the Supreme Court has explained in a case involving another limitations period prescribed by the Bankruptcy Code, "It is hornbook law that limitations periods are customarily subject to equitable tolling . . . unless tolling would be inconsistent with the text of the relevant statute." *Young v. United States*, 535 U.S. 43, 122 S.Ct. 1036, 1040, 152 L.Ed.2d 79 (2002) (internal citations and quotation marks omitted).  The Court further observed:

> Congress must be presumed to draft limitations periods in light of this background principle.  That is doubly true when it is enacting limitations periods to be applied by bankruptcy courts, which are courts of equity and "appl[y] the principles and rules of equity jurisprudence."

*Id.* [alteration in original; internal citations omitted].  Equitable tolling, the Court explained, has traditionally been applied in situations "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.*  In *Young*, however, the Supreme Court extended equitable tolling to a situation that did not involve actual misconduct, but in which the debtor's conduct (the filing of an intervening

---

[11] Both at oral argument and in his brief, debtor's counsel asserted that the blank Form 22A did not really hinder the U.S. Trustee in making a determination of whether the presumption applied because the information needed to complete the form and conduct the means-test analysis could be derived from other information in the debtors' schedules and statement of financial affairs. The court does not concur.  The U.S. Trustee is required to conduct a means test review in every case involving consumer debtors.  There is no simple one-to-one correspondence between entries on, say, Schedules I and J (monthly income and expenses) and the means test form. Additionally, even with respect to information that could simply be copied from the schedules or the statement of financial affairs, the time and labor involved would be enormous given the tremendous volume of consumer chapter 7 cases filed in this court. Put another way, it is not the U.S. Trustee's duty to construct a Form 22A for the debtor; that duty falls on the debtor.

bankruptcy case that gave rise to an automatic stay) nevertheless justified extension of the 3-year look-back period for dischargeability of certain taxes.  With respect to the present case, even if the court were to adopt the view that a 10-day statement is defective if it does not take an "unequivocal" position, the circumstances would readily, in the court's view, fall within those situations in which "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period."  Because any defect in the statement is the direct result of the debtors' own conduct in not filing a complete Form 22A, the court would treat the limitation period as having been equitably tolled.

V.

Only brief discussion is required with respect to the debtors' second ground of objection, which is that the motion to dismiss, to the extent based on totality of the circumstances, fails to "state with particularity the circumstances alleged to constitute abuse," as required by Rule 1017(e)(1).  It is certainly true that the motion to dismiss is terse, consisting in its entirety of 14 numbered paragraphs, only one of which extends beyond a single sentence.  Although some of the paragraphs are relevant only to the means test presumption of abuse, the motion does set forth at least some allegations that are relevant to the totality of the circumstances analysis. Specifically, the motion alleges that the debtors' annual income is $127,025; that their household size is four, that they have no secured debt;[12] that their unsecured debt is $22,340;[13] and that

---

[12] Although on their schedules the debtors list over $165,000 in secured debts, they propose to surrender the collateral—a house and an automobile—to the creditors.

[13] The debtors dispute this allegation and contend that likely deficiencies from the foreclosure of their house and the repossession of an automobile will substantially increase the amount of their unsecured debt.  On an objection for failure to state a claim for relief, however, the court is

(continued...)

"[w]ith a reasonable budget, the debtors have the ability to repay all or a substantial portion of their unsecured debts over a 60 month period." Motion to Dismiss ¶ 8, 9, 10, and 11. While the motion could fairly be characterized as a bare-bones pleading, the court cannot find that it leaves the debtors in the dark as to "the circumstances alleged to constitute abuse."[14]  Accordingly, the objection that the motion lacks sufficient specificity will be overruled.

     A separate order will be entered overruling the debtors' objection to the motion to dismiss and setting a scheduling hearing.

Date: _____    _____
                                              Stephen S. Mitchell
Alexandria, Virginia                        United States Bankruptcy Judge

---

[13](...continued)
required to accept the well-pleaded allegations as true.

[14]  In *Green v. Staples (In re Green)*, 934 F.2d 568 (4th Cir.1991), the Fourth Circuit identified a number of factors relevant to a totality of the circumstances analysis.  These include whether the petition was filed because of sudden illness, calamity, disability, or unemployment; whether the debtor incurred cash advances and made consumer purchases far in excess of ability to repay; whether the debtor's proposed family budget is excessive or unreasonable; whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect his or her true financial condition; whether the petition was filed in good faith; and the relation of the debtor's future income to his or her future necessary expenses. *Id.* at 572-573. Many of these are subsumed into a general ability-to-pay inquiry, but others (such as improvident incurrence of debt and the filing of inaccurate or false schedules) plainly involve matters unrelated to a debtor's ability to repay debts in a chapter 13 plan.  The court does agree with the debtors that the motion to dismiss does not plead any "circumstances" beyond the debtors' ability to repay debts in a chapter 13 plan. Accordingly, in litigating the totality of the circumstances, the U.S. Trustee will be limited to presenting evidence and argument on that issue.

Copies to:

David C. Jones, Jr., Esquire
David C. Jones, Jr., P.C.
10617 Jones Street, Ste 301-A
Fairfax, VA 22030
Counsel for the debtors

Jack Frankel, Esquire
Office of the United States Trustee
115 South Union St., Suite 210
Alexandria, VA  22314

Angel Celeste Jasper
James Thomas Jasper, Jr.
6720 Eldermill Lane
Gainesville, VA 20155
Debtors

Donald F. King, Esquire
9302 Lee Highway, Suite 1100
Fairfax, VA  22030
Chapter 7 trustee